UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BILLY STACY,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD OF INDIANA, LLC,<br>DUANE PIERCE,<br>ARAMARK CORPORATION,<br>JACKSON,<br>MASON,<br><br>Defendants. | ) | No. 1:21-cv-00644-SEB-TAB |

**ORDER GRANTING STATE DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

Plaintiff Billy Stacy, an Indiana Department of Correction (IDOC) inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983 based upon allegations that Lt. Jackson and Cpt. Mason (the state defendants) violated his Eighth Amendment rights after he was assaulted by another inmate and suffered injury to his jaw. Dkt. 13. The state defendants now seek summary judgment on the basis that Mr. Stacy failed to first exhaust his administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

For the reasons discussed below, the Court **GRANTS** the state defendant's unopposed motion for summary judgment, dkt. [57], such that the Eighth Amendment claims against them are **DISMISSED without prejudice.** [1]

---

[1] Defendants Wexford of Indiana, LLC, and Dr. Duane Pierce provided notice to the Court on March 15, 2022, of their withdrawal of the exhaustion defense. *See* dkt. 44. The claims against Wexford of Indiana, LLC, and Dr. Duane Pierce shall proceed to the merits of the claims alleged against them.

Defendant Aramark Corporation filed its motion for summary judgment on exhaustion, dkt. 60, which the Court will rule upon via separate order.

## I. Background

Mr. Stacy's allegations relate to his incarceration at Pendleton Correctional Facility (Pendleton) where he was assaulted by another inmate on January 1, 2020, and he suffered a broken jaw and required a surgery that wired his jaw shut. Dkt. 13. Mr. Stacy alleges that Cpt. Mason and Lt. Jackson denied his requests for medical treatment and appropriate food given his broken jaw. *Id.* When Mr. Stacy tried to seek help by throwing trash outside of his cuff port and covering up the camera in his cell on January 29, 2020, Lt. Jackson sprayed him with OC spray arbitrarily and without warning. *Id.*

An Eighth Amendment deliberate indifference claim based on the denial of food and medical treatment is proceeding against Cpt. Mason and Lt. Jackson *Id.* at 6. An excessive force claim is also proceeding against Lt. Jackson. *Id.* The state defendants argue that these claims must be dismissed because Mr. Stacy did not exhaust his administrative remedies prior to filing this lawsuit. Specifically, that Mr. Stacy never initiated a second appeal with respect to his formal grievance regarding his deliberate indifference claims and that he failed to timely file a formal grievance with respect to his excessive force claim. Dkt. 57.

## II. Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in

the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Mr. Stacy failed to timely respond to the summary judgment motion, and his motion for a second extension of time, filed nearly seven months after the final deadline, was denied.[2] *See* dkt. 72. Accordingly, the facts in the motion for summary judgment are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-86 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it "[r]educe[s] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

[2] The Court found that "Mr. Stacy has not shown good cause or diligence of his obligation to litigate this action by waiting nearly seven months from the Court's initial extension of his deadline to file his response to communicate with the Court . . . . Though Mr. Stacy contends it was difficult for him, due to his transfers, to enroll in the Prisoner E-filing program, he has not explained why he could not communicate with the Court using the United States Postal Mail in the interim." Dkt. 72 at 3 (Mar. 2, 2023, Order Denying Plaintiff's Second Motion for Extension of Time).

## II. Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party. *See Reaves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### A. Offender Grievance Process

At all times relevant to his complaint, Mr. Stacy was incarcerated at Pendleton, an IDOC facility. Dkt. 2. "As required under IDOC policy, an offender grievance program is in place" at Pendleton. Dkt. 58-1, ¶ 5 (Conyers Aff.). IDOC Policy and Administrative Procedure 00-02-301, Offender Grievance Process (Grievance Process), effective October 1, 2017, sets forth the steps through which inmates committed to the IDOC "may resolve concerns and complaints relating to their conditions of confinement." Dkt. 58-2 at 1. This policy is the only grievance process recognized by the IDOC. Dkt. 58-1, ¶ 8.

Inmates must take the following three steps to complete the Grievance Process, after first attempting to resolve the issue informally. Dkt. 58-2 at 3, 8-13. First, the inmate shall submit a completed State Form 45471 to file a formal "offender grievance" within 10 business days of the incident. *Id.* at 9. Second, if the formal grievance is not resolved to the inmate's satisfaction, the inmate may file a completed State Form 45473 Level 1 "grievance appeal" and submit it to the Offender Grievance Specialist within 5 business days after the date of the grievance response (or if the inmate does not receive a response to the grievance within the applicable timeframe, it may be appealed as if it had been denied). *Id.* at 11. The Level 1 grievance appeal is decided by the Warden or his designee. *Id.* at 12.

To complete the third and final step of the formal grievance process, the inmate must appeal the Warden/designee's decision to the Department Offender Grievance Manager. *Id.* at 12-13. This requires the inmate to, "check the 'Disagree' box, sign, and submit the completed State Form 45473 'Offender Grievance Appeal,' and any additional, pertinent documentation to the Offender Grievance Specialist" within 5 business days of the Warden/designee's appeal response. *Id.* This is a Level 2 "grievance appeal." *Id.* The Offender Grievance Specialist "shall scan and enter the completed State Form 45473 and any additional pertinent documents" into the grievance database. *Id.*

"The successful exhaustion of the grievance process requires an offender to timely complete each step or level of the Offender Grievance Process. An offender is required to use the proper grievance forms in order to exhaust successfully, and must timely file[] each grievance within the timeframe outlined in the Offender Grievance Process." Dkt. 58-1, ¶ 12.

Inmates are informed of the Grievance Process during Offender Admission and Orientation. *Id.*, ¶ 32. Staff ensure that inmates are notified of the Grievance Process and are aware of how to obtain copies of the process. Dkt. 58-2 at 7. Inmates receive access to copies of the process in the Department's Offender Handbook, which includes a section on the Grievance Process. *Id.* Copies of the Grievance Process are also available in the law library, through requests to counselors, and from the Grievance Specialist. Dkt. 58-1, ¶ 33. "The offender grievance process is available to offenders at all times, including when they are in restrictive housing or segregation." *Id.*, ¶ 31.

**B. Mr. Stacy's Use of the Grievance Process**

IDOC retains records of every formal grievance and appeal submitted by an inmate. *Id.*, ¶¶ 19, 35. The record contains Mr. Stacy's grievance history and related grievances, which indicate

that Mr. Stacy failed to complete the Grievance Process related to his Eighth Amendment claims against the state defendants. Dkt. 58-3; dkt. 58-4.

**1. Eighth Amendment Deliberate Indifference Claims**

Mr. Stacy filed a formal grievance related to his Eighth Amendment deliberate indifference claims against the state defendants that was received on January 14, 2020, and it was logged as grievance #110952. Dkt. 58-1, ¶¶ 38-39; dkt. 58-3 at 2; dkt. 58-4 at 1-14. The grievance complained about the delay in treatment between when he was injured on January 1, 2020, and when he received treatment on or about January 10, 2020. Dkt. 58-4 at 2. The Grievance Specialist responded on January 22, 2020, that Mr. Stacy had been seen and evaluated, he returned to the facility with his jaw repaired, and he was currently on a full liquid diet. *Id.* at 1-2.

Mr. Stacy disagreed with the response and filed a first level appeal that was received on January 27, 2020. *Id.* at 3-8. Mr. Stacy explained that the medical care provided continues to be inadequate and that his liquid diet has been discontinued. *Id.* at 3. The warden/designee issued a response to the first level appeal on February 12, 2020, which deemed Mr. Stacy's medical care appropriate. *Id.* at 3.

The IDOC's grievance history records reflect that Mr. Stacy did not file his second level appeal, meaning that he never returned the first level appeal with the "Disagree" box checked, "which would have indicated that he wished to appeal to the Department Grievance Manager." Dkt. 58-1, ¶ 39. The Grievance Specialist marked that the second level appeal had not been received by the deadline of February 24, 2020. *Id.*; dkt. 58-4 at 9 (stating "confidential out of time 2-24-2000").

**2. Eighth Amendment Excessive Force Claim**

Mr. Stacy submitted a grievance related to the excessive force incident with Lt. Jackson on

January 29, 2020. Dkt. 58-1, ¶ 40. The Grievance Specialist received the formal grievance two days later and returned it to Mr. Stacy that same day. *Id.* The grievance was returned because Mr. Stacy "had submitted the grievance too early . . . without allowing staff five business days to respond to his informal grievance." *Id.*; dkt. 58-5 at 1-3 ("You have submitted the form too early. The situation you describe does not exist yet, or you have not allowed enough time for an informal resolution. If you cannot show good cause for submitting it now, you must wait until the correct time has come."). The return instructed Mr. Stacy to "allow staff 5 business/working days to respond." Dkt. 58-5 at 1.

The Grievance Specialist attested that if a formal grievance "is rejected, it is returned to the offender along with an explanation as to why the form was returned," the return highlights the reasons for the denial, and "[i]t is then the offender's responsibility to make the necessary revisions to the grievance form and to return it" to the Grievance Specialist within five business days. *Id.*, ¶ 18. Mr. Stacy did not resubmit the grievance. *Id.*, ¶ 41.

Rather, Mr. Stacy filed another formal grievance regarding the incident with Lt. Jackson nearly seven months later, that was received on August 26, 2020. *Id.*, ¶ 42. This grievance was returned as untimely because it was submitted outside of the ten-business day from the date of incident window. *Id.*, ¶ 43. "An offender who does not follow the established time limits" in the Grievance Process "may have [his] grievance or appeal denied for failure to comply with the time frame," however, the Grievance Specialist has "discretion to consider an untimely grievance if there was good cause." *Id.*, ¶ 28. Because this grievance was filed many months outside of the timeframe permitted, the Grievance Specialist attested it "would not have been allowed to be re-submitted[.]" *Id.*, ¶ 43.

## III. Discussion

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the movant, the state defendants bear the burden of establishing that the administrative remedies upon which they rely were available to Mr. Stacy. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,'

and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

**A. Eighth Amendment Deliberate Indifference Claims**

The undisputed record indicates that the Grievance Process was available to Mr. Stacy. Indeed he completed the first two steps related to his Eighth Amendment deliberate indifference claims. But, fatal to exhaustion of his administrative remedies is the undisputed record demonstrating that Mr. Stacy did not complete the required final step of the grievance process by filing a second level appeal. *See, e.g., Ford*, 362 F.3d at 397. Thus, he has not exhausted these claims against the state defendants.

**B. Eighth Amendment Excessive Force Claim**

The undisputed record shows that while Mr. Stacy attempted to grieve the excessive force incident with Lt. Jackson, his first formal grievance was returned as too early, and the return provided explanation that Mr. Stacy was to first allow five business days for a response to his informal resolution. Dkt. 58-5 at 1 ("Please allow staff 5 business/working days to respond to your SF36935"). The state defendants have not pointed to any portion of the Grievance Process that requires a five-day waiting period, and the Court could not identify one. However, Mr. Stacy was required to attempt to resolve his grievance informally prior to filing his formal grievance. Dkt. 58-2 at 3. The policy states:

> Before filing a grievance, an offender is **required to attempt** to resolve a complaint informally and provide evidence (e.g., 'To/From' correspondence, State Form 36935, 'Request for Interview') of the attempt. The offender may do this by discussing the complaint with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where

> the situation occurs. If the offender is uncomfortable discussing the issue with that staff member, he/she may discuss with the staff person's immediate supervisor.

*Id.* at 8-9 (emphasis added).

The Supreme Court has made clear that a remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. The rejection of Mr. Stacy's formal grievance dated January 29, 2020, with instructions to resubmit in five days does not reflect an attempt to thwart Mr. Stacy from taking advantage of the Grievance Process. The unopposed summary judgment record reflects that Mr. Stacy filed his formal grievance prior to attempting to informally resolve his complaint about the excessive force incident with Lt. Jackson. In addition, while the instructions provided (resubmit in five days) was arbitrary in that a response to Mr. Stacy's SF36935 request could have been provided earlier, or perhaps not at all, it was reasonable guidance given that the formal grievance was filed too soon.

Rather than to re-submit his grievance in short order after that time passed, Mr. Stacy waited for nearly seven months to raise the issue again. Mr. Stacy's August 2020 grievance acknowledged his untimeliness. Dkt. 58-6 ("Yes, the reason I'm late at filing this grievance you stated I was filing too early. I'm late now, because I was waiting on a response from Lt. Jackson I never received.").

The Court finds that there is no evidence to support that Mr. Stacy was somehow thwarted from re-submitting his first grievance after five business days had lapsed to first allow for informal resolution. Indeed the Grievance Process makes clear that if an offender is unable to resolve the complaint informally, he can move to the first step of formal resolution. Dkt. 58-2 at 9. The return of Mr. Stacy's first grievance did not state he was prevented from filing a grievance at all, only that he needed to wait for five additional business days before doing so, to allow time for a response

to his informal attempt. Moreover, nothing in the return, or the Grievance Process itself, indicates that Mr. Stacy needed to wait for an official informal resolution response from Lt. Jackson after those five business days expired before re-submitting his grievance. Mr. Stacy simply did not take further action in time to take the first step in the Grievance Process, let alone complete all three steps.

"For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005) (quotation marks and citation omitted). Mr. Stacy did not do so as to his Eighth Amendment excessive force claim against Lt. Jackson. In addition, there are no "contested facts material to the question of whether the grievance process was available to [Mr. Stacy]," and summary judgment is therefore proper. *Smallwood v. Williams*, 59 F.4th 306, 315-16 (7th Cir. 2023).

Accordingly, the consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that this action should not have been brought against the state defendants, and these federal claims must now be dismissed without prejudice. *Ford*, 362 F.3d at 401 (holding that "all dismissals under § 1997e(a) should be without prejudice.").

## IV. Conclusion

For the reasons explained above, the state defendants' unopposed motion for summary judgment on exhaustion, dkt. [57], is **GRANTED**. All claims against the state defendants are **DISMISSED without prejudice**. In these circumstances, no partial final judgment shall issue at this time.

**The clerk is directed to terminate** Cpt. Mason and Lt. Jackson as defendants on the docket.

**IT IS SO ORDERED.**

Date: 3/7/2023

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BILLY STACY
104907
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Thomas Pratt
Office of Indiana Attorney General
Thomas.Pratt@atg.in.gov

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com