UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BILLY STACY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-00644-SEB-TAB |
| | ) |
| WEXFORD OF INDIANA, LLC, | ) |
| DUANE PIERCE, | ) |
| ARAMARK CORPORATION, | ) |
| JACKSON, | ) |
| MASON, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANT ARAMARK CORPORATION'S
UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

Plaintiff Billy Stacy, an Indiana Department of Correction (IDOC) inmate, filed this civil rights action pursuant to 42 U.S.C. § 1983 based upon allegations that after he was assaulted by another inmate in January 2020, he suffered an injury to his jaw that required surgery and for his jaw be wired shut. Dkt. 13. Mr. Stacy alleges that he needed a liquid diet, and that defendant Aramark Corporation (Aramark) was aware of his medical needs through numerous grievances and health care requests and refused to provide him adequate medical care for his jaw and failed to provide him consumable food. *Id.* at 3. His Eighth Amendment deliberate indifference claim proceeds against Aramark based on allegations that Mr. Stacy was denied medical care and food due to policies or practices of cutting costs. *Id.* at 6. Defendant Aramark now seeks summary judgment on the basis that Mr. Stacy failed to first exhaust his administrative remedies before bringing this lawsuit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).[1]

---

[1] Defendants Wexford of Indiana, LLC, and Dr. Duane Pierce provided notice to the Court on March 15, 2022, of their withdrawal of the exhaustion defense. *See* dkt. 44. State defendants Cpt. Mason and Lt.

For the reasons discussed below, the Court **GRANTS** defendant Aramark's unopposed motion for summary judgment, dkt. [60], such that the Eighth Amendment claims against it are **DISMISSED without prejudice.**

## I. Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

Mr. Stacy failed to timely respond to the summary judgment motion, and his motion for a second extension of time, filed nearly seven months after the final deadline, was denied.[2] *See* dkt. 72. Accordingly, the facts in the motion for summary judgment are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and

---

Jackson filed their motion for summary judgment on exhaustion, dkt. 57, which the Court will rule upon via separate order.

[2] The Court found that "Mr. Stacy has not shown good cause or diligence of his obligation to litigate this action by waiting nearly seven months from the Court's initial extension of his deadline to file his response to communicate with the Court . . . . Though Mr. Stacy contends it was difficult for him, due to his transfers, to enroll in the Prisoner E-filing program, he has not explained why he could not communicate with the Court using the United States Postal Mail in the interim." Dkt. 72 at 3 (Mar. 2, 2023, Order Denying Plaintiff's Second Motion for Extension of Time).

factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-86 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it "[r]educe[s] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II. Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to the non-moving party. *See Reaves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### A. Offender Grievance Process

At all times relevant to his complaint, Mr. Stacy was incarcerated at Pendleton, an IDOC facility. Dkt. 2. An offender grievance policy is in place at Pendleton. Dkt. 61-1, ¶¶ 4-5 (Conyers Aff.). IDOC Policy and Administrative Procedure 00-02-301, Offender Grievance Process (Grievance Process), effective October 1, 2017, sets forth the steps through which inmates committed to the IDOC "may resolve concerns and complaints relating to their conditions of

confinement." Dkt. 58-2 at 1.[3] This policy is the only grievance process recognized by the IDOC. Dkt. 58-1, ¶ 8 (Conyers Aff.).

Inmates must attempt to resolve a complaint informally and provide evidence of the attempt before turning to the formal grievance process. Dkt. 58-2 at 8. The formal grievances require three steps to complete the Grievance Process. *Id.* at 3. First, the inmate shall submit a completed State Form 45471 to file a formal "offender grievance" within 10 business days of the incident. *Id.* at 9. Second, if the formal grievance is not resolved to the inmate's satisfaction, the inmate may file a completed State Form 45473 Level 1 "grievance appeal" and submit it to the Offender Grievance Specialist within 5 business days after the date of the grievance response (or if the inmate does not receive a response to the grievance within the applicable timeframe, it may be appealed as if it had been denied). *Id.* at 11. The Level 1 grievance appeal is considered by the Warden or his/her designee. *Id.* at 12.

Third and finally, "[i]f, after receipt of the appeal response, the offender is still dissatisfied, or no response is received within the time frame, he/she may appeal to the Department Offender Grievance Manager. *Id.* To appeal the Warden/designee's response, "the offender shall check the 'Disagree' box, sign, and submit the completed State Form 45473 'Offender Grievance Appeal,' and any additional, pertinent documentation to the Offender Grievance Specialist" within 5 business days of the Warden/designee's appeal response. *Id.* at 12-13. This is a Level 2 "grievance appeal." *Id.* The Offender Grievance Specialist "shall scan and enter the completed State Form 45473 and any additional pertinent documents" into the grievance database. *Id.* The Level 2 grievance appeal is considered by the Department Offender Grievance Manager. *Id.* at 3, 9-12.

---

[3] Defendant Aramark's summary judgment record attaches the Offender Grievance Policy, effective September 1, 2020, after the dates of Mr. Stacy's allegations. Dkt. 61-2. The state defendants included the Policy, effective October 1, 2017, applicable to Mr. Stacy's allegations, dkt. 58-2. The Court will cite to the version available in the record at dkt. 58-2.

"The successful exhaustion of the grievance process requires an offender to timely complete each step or level of the Offender Grievance Process. "The Offender Grievance Process is not complete until the inmate completes the appeal process." Dkt. 61-1, ¶ 11.

Inmates are informed of the Grievance Process during Offender Admission and Orientation. *Id.*, ¶ 6. Staff ensure that inmates are notified of the Grievance Process and are aware of how to obtain copies of the process. Dkt. 58-2 at 7. Inmates receive access to copies of the process in the Department's Offender Handbook, which includes a section on the Grievance Process. *Id.* Copies of the Grievance Process are also available in the law library, through requests to counselors, and from the Grievance Specialist. *Id.*, ¶ 6; dkt. 58-1, ¶ 33. "The offender grievance process is available to offenders at all times, including when they are in restrictive housing or segregation." Dkt. 58-1, ¶ 31.

**B. Mr. Stacy's Use of the Grievance Process**

IDOC retains records of every formal grievance and appeal submitted by an inmate and accepted by the grievance specialist. *Id.*, ¶¶ 19, 35. The record contains Mr. Stacy's grievance history and related grievances, which indicate that Mr. Stacy failed to complete the Grievance Process related to his Eighth Amendment claims against Aramark.

Mr. Stacy submitted a formal grievance, received on March 10, 2020, raising complaints related to lack of receipt of a liquid diet. Dkt. 61-1, ¶ 12. The Grievance Specialist reached out to Aramark on March 13, 2020, and she received an email from Aramark in response. *Id.*, ¶ 13; dkt. 61-3 at 5-8. The Grievance Specialist provided this email response to Mr. Stacy in her response to his formal grievance on March 18, 2020. Dkt. 61-1, ¶ 14. Mr. Stacy signed the response the same day indicating that he disagreed with it, and then submitted his first level appeal on March 23, 2020. Dkt. 61-3 at 3-7. The Grievance Specialist received Mr. Stacy's first level appeal two days

later, and the record reflects that Mr. Stacy incorrectly and prematurely checked the "Disagree" box at the bottom of the form, which he dated March 23, 2020. *Id.* at 3. This box is to be completed after an offender receives their first level appeal response back from the Warden/designee to indicate the offender's disagreement and to initiate a second level appeal to the Department Offender Grievance Manager. *Id.* However, the Warden/designee reviewed the Level 1 appeal on the merits and agreed with the response from Aramark. Dkt. 61-3 at 2. The Warden's response to the first level appeal was provided to Mr. Stacy on April 6, 2020. Dkt. 61-1 at ¶ 16. The Grievance Specialist does not have any records reflecting that Mr. Stacy took any further action to appeal the Level 1 response. *Id.*

### III. Discussion

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *Nat'l Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to

properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the movant, the defendant Aramark bears the burden of establishing that the administrative remedies upon which it relies were available to Mr. Stacy. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

"For a prisoner to exhaust his remedies within the meaning of § 1997e(a), he must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005) (quotation marks and citation omitted). There is no evidence in the record to support that the Grievance Process was unavailable to Mr. Stacy. Indeed there is no dispute that he completed the first two steps in the process.

At issue is whether he completed the third and final step by filing a second level appeal. Defendant Aramark argues that Mr. Stacy's registration of his disagreement, before he even received the Warden's response, was not effective. Dkt. 62 at 7 ("Mr. Stacy never appealed that Level 1 response with a Level II Appeal"). This view is supported by the Grievance Process which states: "[i]f, **after receipt of the appeal response**, the offender is still dissatisfied, or no response

7

is received within the time frame, he/she may appeal to the Department Offender Grievance Manager." Dkt. 58-2 at 12-14 (emphasis added). But there is no evidence that Mr. Stacy submitted a second level appeal *after* the Warden's response was received on April 6, 2020. *See* dkt. 61-2 at 14. The evidence reflects that this process was available and there is no evidence to the contrary.

Accordingly, the consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that this action should not have been brought against defendant Aramark, and these federal claims must now be dismissed without prejudice. *Ford*, 362 F.3d at 401 (holding that "all dismissals under § 1997e(a) should be without prejudice.").

### IV. Conclusion

For the reasons explained above, defendant Aramark's unopposed motion for summary judgment on exhaustion, dkt. [60], is **GRANTED.** All claims against Aramark are **DISMISSED without prejudice**. In these circumstances, no partial final judgment shall issue at this time.

**The clerk is directed to terminate** Aramark Corporation as a defendant on the docket.

**IT IS SO ORDERED.**

Date: 3/7/2023

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

BILLY STACY
104907
INDIANA STATE PRISON
INDIANA STATE PRISON
Electronic Service Participant – Court Only

Douglass R. Bitner
Stoll Keenon Ogden PLLC
doug.bitner@skofirm.com

8

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Thomas Pratt
Office of Indiana Attorney General
Thomas.Pratt@atg.in.gov

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com